UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JEREMIAH HUNLEY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 3:10-CV-455 |
| ) | JURY DEMANDED |
| GLENCORE, LTD, INC., ) | |
| EAST TENNESSEE ZINC ) | |
| COMPANY, LLC, TENNESSEE ) | |
| ZINC SERVICES COMPANY, ) | |
| LLC, SANDVIK MINING ) | |
| SANDVIK AND CONSTRUCTION ) | |
| U.S.A, LLC, SANDVIK MINING ) | |
| AND CONSTRUCION OY and ) | |
| DETROIT DIESEL ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT TENNESSEE ZINC SERVICES COMPANY, LLC'S AND EAST TENNESSEE ZINC COMPANY, LLC'S MOTION TO DISMISS**

Comes plaintiff, by and through counsel, and would respond to Defendants Tennessee Zinc Services, LLC's (hereafter referred to as TZS) and East Tennessee Zinc Company, LLC's (hereafter referred to as ETZ) motion to dismiss, and would rely upon the following memorandum of law.

Defendant TZS and ETZ joined in the motion filed by defendant Sandvik Mining and Construction U.S.A, LLC, which argued that this Court did not have subject matter jurisdiction over the case (i.e., that diversity did not exists), and that plaintiff failed to re-file the claim within the one year statute of limitations. Plaintiff responded to such arguments on December 27, 2010.

1

Defendants TZS and ETZ, however, included an additional argument, arguing that plaintiff's claims were barred by the exclusive remedy doctrine under Tennessee's worker's compensation laws. Plaintiff would rely upon the following memorandum of law to argue that such argument is without merit, and that the exclusive remedy doctrine does not apply to both defendants in the present case.

1. <u>The Exclusive Remedy in workers' compensation does not extend to separate and distinct companies</u>

The law is well settled that "separate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice." <u>Green v. Windsor Mach. Products, Inc.</u> 173 F.3d 591(Mich. 1999) "[T]he vast majority of states do not extend the reach of the exclusive remedy provision of a workers' compensation act by treating parent *and* subsidiary corporations as a single entity. Rather, as recognized by the majority in Wells, courts generally respect the separateness of corporate entities." <u>Green v. Windsor Mach. Products, Inc.</u> at 593 (Mich. 1999)(citing <u>Wells v. Firestone Tire and Rubber Co.</u>, 421 Mich. 641 (1984) *and* <u>Wodogaza v. H&R Terminals, Inc.</u>, 161 Mich. App. 746, 411 N.W.2d 848 (1987))(emphasis added).

The court in <u>Green v. Windsor Machine</u> also discussed the incentives of creating various corporate structures and the concomitant responsibilities arising therefrom:

We are aware that manifold business, financial, practical, and perhaps even esthetic considerations may move a corporate entity to diversify its structure through the creation of subsidiary corporations. Within those considerations, however, should be a recognition of the obligations which arise as a consequence of such diversification. As noted in <u>Boggs v. Blue Diamond Coal Co.</u>, 590 F.2d 655, 662 (6th Cir 1979), "<u>the owners may take advantage of the benefits of dividing the business into separate corporate parts, but principles of reciprocity require that courts also recognize the separate identities of the enterprises when sued by an injured employee.</u>" In this case, absent the equitable and overriding public policy considerations present in Wells, we decline to circumvent the general rule by reverse-piercing corporate veils. Under the circumstances of this case, we believe that the general rule and equitable considerations require us to recognize the separate corporate identities of defendants . . . . "

<u>Thus, defendants cannot obtain the protection of the exclusive remedy provision of the [Act] available to employers . . . ."</u>

<u>Green v. Windsor Machine</u> at 594 (citing <u>Wodogaza v. H&R Terminals, Inc.</u> at 852)(emphasis added). In conclusion, the court held that "defendants should be recognized as separate corporations to protect Plaintiff [] from injury by a defective machine manufactured and maintained by her own employer's sister subsidiaries. " <u>Green v. Windsor Machine</u> at 595.

Judge Robert Taylor declined to disregard the corporate entities in a similar case. In <u>Latham v. Technar, Inc.</u>, 390 F.Supp. 1031 (E.D.Tenn.1974), Judge Taylor held that the administrator of the estate of a deceased employee of a wholly owned subsidiary could sue the parent for its negligence in causing the death of the employee. The parent contended that plaintiff's sole remedy was workmen's compensation benefits. The court held, however, that the plaintiff could maintain a common law wrongful death action against the parent as a third party. Judge Taylor's decision was cited by <u>Bogg v. Blue Diamond Coal Co.</u>, which discussed the importance of protecting corporate identities in lawsuits, and is still one of the leading and most cited cases on this issue. <u>Boggs v. Blue Diamond Coal Co.</u>, 590 F.2d 655, 662 (6th Circuit 1979).

II. <u>TZS and ETZ were separate and distinct companies</u>

First, by their own admission TZS and ETZ are separate and distinct companies. When plaintiff first investigated the case, defense was asked via letter to identify plaintiff's employer for the purposes of worker's compensation. (Correspondence dated June 23, 2008, <u>Exhibit 1</u>). In response, counsel for defendants TZS and ETZ replied with the following: **"In response to your inquiry regarding the identity of Mr. Hunley's employer, his employer is Tennessee Zinc Services Company, LLC."** (Correspondence dated July 24, 2008, <u>Exhibit 2</u>). Furthermore, both plaintiff's employment checks and earning statements indicate TZS as the

3
Case 3:10-cv-00455  Document 28  Filed 01/11/11  Page 3 of 11  PageID #: 285

employer, not ETZ. (Exhibit 3 and 4 , respectively). Once in suit, defendants provided the following interrogatory response in the state case:

1. Do you admit or deny that East Tennessee Zinc Company, LLC is a separate business entity than Tennessee Zinc Services Company, LLC? **Admitted.**

2. Do you admit or deny that East Tennessee Zinc Company, LLC had a different registered agent than Tennessee Zinc Services Company, LLC, as of May 27, 2010? **Admitted.**

...

4. Do you admit or deny that East Tennessee Zinc Company, LLC, performed different services and functions than Tennessee Zinc Services Company, LLC in December 2001? **Admitted to the extent that East Tennessee Zinc Company, LLC operated the facilities and Tennessee Zinc Services Company, LLC issued payroll checks to individuals working in said facilities.**

5. Do you admit or deny that East Tennessee Zinc Company, LLC performed different services and functions than Tennessee Zinc Services Company, LLC as of May 27, 2010?. **Admitted.**

(Defendant ETZ Response to Plaintiff's First Set for Request to Admissions, Circuit Court for Jefferson County, Tennessee, Exhibit 5).[1]

Second, the two companies had separate managers and separate operating agreements. (See operating agreements of ETZ and TZS, previously filed). While Stephen Cramer, Cheryl Driscoll, and David Porter were designated as the managers for TZS, (the employer), a complete

---

[1] Furthermore, plaintiff inadvertdly dismissed ETZ instead of TZS in the state case, which was acknowledged by the defendants as a "mistake." (Correspondence dated April 27, 2010, Exhibit 6). The motion to dismiss was withdrawn and the order rescinded to bring the proper party back into the case.

and separate designation of managers was provided for ETZ to operate the mine, and included managers Diego Bellido and Stephen Rowland.

Third, the two companies had separate functions and separate assets. Regarding functions, ETZ was the lessee of the mine, and was charged with the sole responsibility of maintenance, improvements, and eliminating any hazards within the mine. (Lease Agreement, Exhibit 7). TZS acknowledged this clear division, and stated the following in discovery responses: "**Tennessee Zinc Services Company, LLC was not the owner of the property at the time of the accident that forms the basis of this litigation. The property was owned by the Industrial Development Board of Jefferson County, Tennessee, and East Tennessee Zinc Company, LLC, held a leasehold estate in the property and also had residual rights in the property.**" (TZS's Answers to Plaintiff's First Set of Interrogatories, Circuit Court of Jefferson County, Tennessee, Exhibit 8). Furthermore, TZS admits that it was ETZ alone that had a maintenance department that performed routine maintenance on the Toro 40D haulage truck: "**East Tennessee Zinc Company, LLC had a maintenance department that performed routine maintenance on the Toro 40D haulage truck that was being driven by the plaintiff at the time of the accident.**" (Interrogatory No. 14, TZS Answers to Plaintiff's First Set of Interrogatories, Exhibit 9).

Regarding assets, ETZ was the purchaser of the equipment, as well as the owner of the mineral rights. (Bill of Sale, Exhibit 10; Mineral Deed, Exhibit 11). All these documents were signed on behalf of ETZ's managers, not the managers for TZS. Furthermore, "**Tennessee Zinc Services Company, LLC was not a member of a partnership with any entity that owned the mine where plaintiff's accident allegedly took place.**" (Interrogatory No. 21., TZS Answers to Plaintiff's First Set of Interrogatories, Exhibit 12).

5

A similar argument was attempted in White v. Swift Transportation Corporation, et al., a 2005 Eastern District case decided by Judge Jordan. White v. Swift Transportation Corporation, Memorandum Opinion, Docket No. 3:05-CV-303. In White, the plaintiff was injured by a Swift Transportation truck, and therefore filed a claim against Swift Transportation Co. After the statute of limitations had passed, it was discovered that the employee belonged to a sister subsidiary of Swift Transportation Co., named Swift Transportation Co. Plaintiff attempted to argue that the two companies, Swift Transportation Corporation and Swift Transportation Co., Inc, sister companies and/or parent company, were one and the same for purposes of litigation. Judge Jordan, however, held the following: "[B]usiness entities are free to create corporate and company structures that perform different functions and own different assets. The fact that there are multiple Swift Transportation entities does not create a material issue of fact concerning the ownership of the subject tractor trailer truck." (emphasis added). Because plaintiff had not sued both entities, the matter was dismissed, a ruling that was upheld by the Sixth Circuit Court of Appeals.

Again, "the owners may take advantage of the benefits of dividing the business into separate corporate parts, but principles of reciprocity require that courts also recognize the separate identities of the enterprises when sued by an injured [party]." Green v. Windsor Mach. Products, Inc. 173 F.3d 591(Mich. 1999). *In other words*, when a company decides to create different subsidies, for whatever reasons (even for aesthetic reasons), they cannot dissolve such entity when it is convenient to avoid liability. In the present case, plaintiff is making a premise liability claim (due to a pipe that obstructed the pathway of plaintiff's vehicle), and also claiming that the truck was negligently maintained (because the engine stalled, causing the brakes and steering to fail), both of which contributed to plaintiff's injury. Assuming plaintiff had not been

6
Case 3:10-cv-00455   Document 28   Filed 01/11/11   Page 6 of 11   PageID #: 288

an employee, but instead an independent contractor, and had only TZS been sued within the statute of limitations, defendant TZS would be arguing that they are not responsible for the negligent acts of ETZ. In other words, when convenient to escape liability, the defendants in the assumption above would be arguing just the opposite, and would demand that the court recognize and honor the separate corporate identities between the two companies.

After the incident the Federal Mine and Health Review Office of Administrative Law Judges cited the mine operator, ETZ, with various violations. Based upon the Complaint, ETZ was the sole mine operator, not TZS: **"At all times relevant to this matter, the Respondent [East Tennessee Zinc Company, LLC] was the operator of the mine."** (Secretary of Labor's Petition for the Assessment of Civil Penalty, Exhibit 13). Both the dangerous condition within the mine (i.e. the pipe), and the maintenance of the vehicle, were investigated by the U.S. Department of Labor. After the investigation the Department cited ETZ for violations under the U.S. Mine Safety Act, and found that "the designated work area regularly entered by employees, was found to have a 6 inch waterline . . . hanging from the back exposing mobile equipment traffic traveling through the area to a safety hazard that was not immediately obvious. No barricades and/or warning signs were posted as to the hazard." (Mine Citation/Order, Exhibit 14). It was the pipe crashing through plaintiff's truck window that caused such injuries to plaintiff that both hands had to be amputated. It is no wonder why ETZ (the mine operator) is desperately attempting to now "dissolve" its corporate identity, and "reverse-pierce the corporate veil" in order to find protection under TZS's (the employer) exclusive remedy provision under Tennessee's workers' compensation laws.

III. <u>The sale of the mine operation to another company, while TZS continues to operate, is conclusive proof that the two companies are separate and distinct entities</u>

7

Defendants argue that the two companies are so "completely integrated and co-mingled," that the corporate identities should be ignored. However this claim is doubtful in light of the sale of ETZ to a Belgium company, NYRSTAR. TZS now recognizes that the mine operation, which is still in operation, is a separate entity. "**Tennessee Zinc Services Company, LLC is now a separate entity and is not owned by NYRSTAR. Until December 6, 2009, it was the sister company to East Tennessee Zinc Company, LLC and they were operated as a single entity.**" (Correspondence dated February 12, 2010, Exhibit 15). Furthermore, consider the perplexing response to an interrogatory question from ETZ:

**Q: Please describe, if known, the business and/or corporate relationship between Tennessee Zinc Services Co., and NYRSTAR f/k/a East Tennessee Zinc Company:**

**A: Tennessee Zinc Company, LLC owned the Membership Interest in Tennessee Zinc Services Company, LLC, East Tennessee Zinc Company, LLC, and Middle Tennessee Zinc Company, LLC. Tennessee Zinc Company, LLC ,sold in 2009, its Membership Interest in East Tennessee Zinc Company, LLC, but retains Membership Interests in the other two entities. Tennessee Zinc Services Company, LLC was established to provide employees for the operation of East Tennessee Zinc Company, LLC and Middle Tennessee Zinc Company, LLC. Employees of Tennessee Zinc Services Company, LLC could be assigned to either or both entities. Regardless of which mine entity an individual worked for, they would receive a single paycheck and benefit package issued by Tennessee Zinc Services Company, LLC at all times relevant to this litigation.**

(Interrogatory No. 9, ETZ Response to Plaintiff's Second Set of Interrogatories, Exhibit 16).

What more proof could one provide than to show conclusively that TZS is still doing business, (i.e., to provide employees to mine operations), and that the Young Mine is still in operation, and that such companies are completely separate and self operating. Unless defendants are claiming that such companies were set up for fraudulent purposes, and were just shell companies to filter money or hide assets, defendants' argument is on its face a fallacy.

In the present case, the defendants admit that throughout their existence they were separate and distinct companies, with separate operating agreements and managers, along with

separate functions and assets. They cannot now request the Court to go back in time, and ignore their corporate identities, and "reverse pierce the corporate veil," in order to avoid liability.

IV. <u>Plaintiff's Employment Application Indicates that TZS is the employer</u>

Though ETZ, the mine operator, is on the letterhead, under "Employment Conditions—Read Carefully Before Signing," TZS is clearly stated as the employer:

> "I understand that any false statements, misrepresentations, or omissions made on this application will exclude me from consideration for employment or subject me to discipline up to and including termination from *Tennessee Zinc Services LLC* who has entered into a shared employer relationship. . . . If employed by *Tennessee Zinc Services LLC*, I will abide by its rules, regulations, policies and procedures. . . . Finally, I freely and voluntarily agree to undergo drug testing as part of the application process, or at any time during my employment with *Tennessee Zinc Services LLC*. I understand that either refusal to submit to the test or failure of the test per *Tennessee Zinc Services LLC's* policy will disqualify me from consideration and/or continuation of employment."

(Plaintiff's Employment Application, <u>Exhibit 17</u>). On the application ETZ is never mentioned as the employer, nor does it state that plaintiff was entering into any employment relationship with ETZ. In fact, ETZ states that **"Jeremiah Hunley never signed an employment contract with East Tennessee Zinc Company, LLC."** (Interrogatory No. 7, TZS Responses to Plaintiff's Supplemental Interrogatories, <u>Exhibit 18</u>). As such, the employment application only bolsters plaintiff's claim that TZS was the employer, not ETZ, the mine operator.

V. <u>TZS provided workers compensation for plaintiff and was listed as an endorsee on the policy</u>

Defendant finally argues that because ETZ was also listed as an endorsee on the policy, therefore ETZ should also be considered the employer (or that corporate identities should be ignored). Such argument is without merit.

The following interrogatory and response was provided in the state case:

> Q: Please state whether Tennessee Zinc Company, LLC had workers' compensation coverage at the time of the incident described in the Complaint, what the carrier was, and what entity or entities are listed as being insured under the policy:
>
> A: Tennessee Zinc Services Company, LLC had workers' compensation coverage at the time of the accident that forms the basis of this Complaint <u>covering injuries to mine employees who were working underground in the Young Mine</u>. The workers' compensation policy was issued by Commerce Industry Insurance Company, Inc. and the entities listed on that policy include Tennessee Zinc Services Company, LLC, East Tennessee Zinc Company, LLC, and Tennessee Zinc Company, LLC.

(TZS's Answers to Plaintiff's Supplemental Interrogatories, <u>Exhibit 19</u>)(emphasis added). TZS further stated the following:

> "<u>Tennessee Zinc Services Company, LLC relied upon its workers' compensation insurance carrier to manage and document plaintiff's claim for workers' compensation benefits.</u> Tennessee Zinc Services Company was provided with updates of plaintiff's medical condition from time to time and a complete copy of the file maintained by Tennessee Zinc Services Company related to plaintiff's worker's compensation claim is attached hereto."

(TZS's Answer to Detroit Diesel Corporation's Request for Documents, <u>Exhibit 20</u>).

The fact that ETZ is listed as an endorsee on the policy, along with TZS, is irrelevant to whether plaintiff is an employee of TZS, and if such companies should still be held as separate and distinct companies under the law.

In desperation defendants cite the intervening petition filed on behalf of the Commerce & Industry Insurance Company, Inc., the workers' compensation insurer, which mistakenly states that the "workers' compensation insurance carrier for East Tennessee Zinc Company, LLC, employer for Plaintiff . . . ." However the motion to intervene does not state that ETZ is the employer, but only that the Commerce & Industry Insurance Company "seeks to intervene in this action to protect and enforce a subrogation lien for any workers' compensation benefits which have been paid by or on behalf of Commerce & Industry Insurance Company, Inc." (Motion to Intervene, <u>Exhibit 21</u>). And more importantly, the actual Complaint filed on behalf of the

Commerce & Industry Insurance Company states that "**Jeremiah Hunley had made a claim for workers' compensation benefits against his employer, Tennessee Zinc Services Company, LLC, or its workers' compensation insurance carrier.**" (Exhibit 22). The Commerce & Industry Insurance Company is not attempting to define or decide plaintiff's employer, but is simply asserting any subrogation claim they may have against a third party. (Furthermore, it should be noted that no such filing to intervene has been filed in the federal case.).

VI. <u>Summary</u>

For the reasons set forth above, plaintiff would request that the court deny defendants' motion, and would request an oral hearing on this matter, along with all pending motions to dismiss.

STANLEY & KURTZ, PLLC

By: <u>s/Dan Channing Stanley</u>
Dan Channing Stanley, BPR# 021002
Counsel for Plaintiff
STANLEY & KURTZ, PLLC
422 South Gay Street, Suite 301
Knoxville, Tennessee 37902
Telephone: (865) 522-9942

### CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2011, a copy of the foregoing Response was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

By: <u>s/Dan Stanley</u>