UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JEREMIAH HUNLEY, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No. 3:10-cv-455 |
| ) | (Phillips) |
| GLENCORE, LTD., INC., EAST TENN. ZINC ) | |
| CO., LLC, TENNESSEE ZINC SERVS. CO., ) | |
| LLC, SANDVIK MINING & CONSTR. USA, ) | |
| LLC, SANDVIK MINING & CONSTR. OY, ) | |
| and DETROIT DIESEL CORP., ) | |
|     Defendants. ) | |

**MEMORANDUM OPINION**

**I.     Introduction**

This matter is before the Court on the motions to dismiss filed by Defendant Sandvik Mining and Construction USA, LLC [Doc. 10]; Defendants East Tennessee Zinc Company, LLC and Tennessee Zinc Services Company, LLC [Doc. 20]; Defendant Detroit Diesel Corporation [Doc. 23]; Defendant Glencore Ltd., Inc. [Doc. 31]; and Defendant Sandvik Mining and Construction Oy [Doc. 34].

For the reasons contained herein, Defendants Sandvik Construction and Mining USA, LLC, Sandvik Construction and Mining Oy, LLC, and Detroit Diesel Corporation's motions to dismiss Plaintiff's claims as barred by the applicable Tennessee statute of limitations are **GRANTED**. Defendant Tennessee Zinc Services Company, LLC's motion to dismiss Plaintiff's claims as barred by the exclusivity provision of the Tennessee Workers' Compensation Act is **GRANTED**. Finally, Defendant East Tennessee Zinc Company, LLC and

Defendant Glencore Ltd., LLC's motions to dismiss this action on various grounds are **GRANTED IN PART** and **DENIED IN PART AS PREMAURE**, subject to renewal.

II.  Statement of the Facts

This action arises from an accident that occurred on December 8, 2007, while Plaintiff was operating a Toro 40D haul truck at Young Mine located in Jefferson County, Tennessee. The truck was manufactured by Defendant Sandvik Mining and Construction Oy, LLC ("Sandvik Oy") and distributed by Defendant Sandvik Mining and Construction USA, LLC ("Sandvik USA"). The truck's engine was manufactured by Defendant Detroit Diesel Corporation ("Detroit Diesel"). At the time of the accident, Young Mine was operated by Defendant East Tennessee Zinc Company, LLC ("East Tennessee Zinc"), and Plaintiff was employed by and receiving paychecks from Defendant Tennessee Zinc Services Company, LLC ("Tennessee Zinc Services"). Defendant Glencore Ltd., Inc. ("Glencore") was the parent company of East Tennessee Zinc and Tennessee Zinc Services. Plaintiff alleges that he suffered serious injuries as a result of the truck accident.

III.  Statement of the Case

On September 29, 2008, Plaintiff filed a complaint in this Court, Case No. 3:08-cv-397, based principally on theories of premises liability. The original defendants in that action were East Tennessee Zinc, Tennessee Zinc Services, the Industrial Development Board of Jefferson County, Innovative Training Solutions, Mossy Creek Mining Company, 11E Rentals, LLC, and Glencore. Plaintiff sought $100 million in damages.

On December 4, 2008, Plaintiff filed a complaint in the Circuit Court for Jefferson County, Tennessee, Case No. 21-933 IV, arising out of the same accident, on theories similar to those in Plaintiff's federal complaint, as well as additional theories including negligence, negligence per se, strict liability, premises liability, *res ipsa loquitor*, the Tennessee Products Liability Act, breach of express and implied warranties, and punitive damages. The original defendants in that action were East Tennessee Zinc, Tennessee Zinc Services, the Industrial Development Board of Jefferson County, Glencore, Sandvik USA, and Detroit Diesel. Sandvik Oy was subsequently added as a defendant. Plaintiff sought $100 million, plus 10% of each Defendant's net worth during the fiscal year for 2007 as punitive damages.

On October 26, 2009, the first federal Complaint was dismissed by order titled "Notice as to Stipulation of Dismissal." [3:08-cv-397, Doc. 7.] On October 25, 2010, Plaintiff filed a "Notice of Voluntary Dismissal" in the state court case, accompanied by a Proposed Order of Entry that read, "Such order relates back to the filing of such notice, *nunc pro tunc*, October 25, 2010." On that same day, October 25, 2010, Plaintiff filed the instant action in this Court. [Doc. 1.] On November 8, 2010, the state court dismissed without prejudice the Plaintiff's state court action by entering the Proposed Order of Entry.

All five Defendants filed motions to dismiss Plaintiff's Complaint. Defendant Sandvik USA contends that (1) the jurisdictional allegations in Plaintiff's complaint are deficient; (2) this Court does not have subject matter jurisdiction over this matter; and (3) Plaintiff's personal injury claims are barred by Tennessee's one-year statute of limitations. [Doc. 10.] Defendants East Tennessee Zinc and Tennessee Zinc Services join in these three grounds for dismissal, and further allege that Plaintiff's cause of action is barred as against them by the exclusivity provisions of the Tennessee Workers' Compensation law set forth in Tenn. Code

Ann. 56-6-108. [Doc. 20.] Defendant Detroit Diesel adopts and joins in the motions to dismiss filed by Defendants Sandvik USA, East Tennessee Zinc, and Tennessee Zinc Services. [Doc. 23.] Defendant Glencore also adopts Sandvik USA's arguments regarding subject matter jurisdiction and the statute of limitations in this case, and adds that Plaintiff failed to state a claim upon which relief could be granted against Glencore. [Doc. 31.] Finally, Defendant Sandvik Oy joins Sandvik's USA's arguments regarding subject matter jurisdiction and the statute of limitations, and further adds that the Court lacks personal jurisdiction over it, as it is a Finnish company with no contacts with or in Tennessee, such that the Court's exercise of general or specific personal jurisdiction would be appropriate. [Doc. 34.]

IV.  Analysis

   A.  **Statute of Limitations**

Because this case is before the Court based upon alleged diversity jurisdiction, the Court must apply the substantive law of the forum state, Tennessee, as if the action had been brought in a state court of the jurisdiction where the Court is located. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Therefore, Tennessee law governs the Court's analysis on the statute of limitations issue. *Reid ex rel. First Horizon Nat. Corp. v. Baker*, No. 10-2413-STA, 2011 WL 976547 (W.D. Tenn. Mar. 16, 2011); *In re Aredia and Zometa Prods. Liability Litigation*, 754 F. Supp. 2d 939 (M.D. Tenn. 2010). When the highest court of the forum has not answered a particular question of law, it is the Court's duty to discern or predict how the Tennessee courts would respond if confronted with the question. *Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F.2d 1362, 1365 (6th Cir. 1984). In the absence of any indication that the Tennessee Supreme Court would adopt a rule contrary to the rule announced

in an intermediate appellate court, a federal court is not free to ignore the announcement of a state appellate court on matters of state law. *Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000).

Plaintiff's cause of action accrued on December 8, 2007, the date he suffered personal injuries from the truck accident. Ordinarily, personal injury claims under Tennessee law must be filed within one year of the accrual of the cause of action. Tenn. Code Ann. § 28-3-104. However, Tenn. Code Ann. § 28-1-105(a) provides that if an action is "commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action," the plaintiff may "commence a new action within one (1) year after the reversal or arrest" of the original action. This savings statute "confers upon a plaintiff who files a second action within one year of a voluntary non-suit of a first action the same procedural and substantive benefits that were available to the plaintiff in the first action." *Cronin v. Howe*, 906 S.W.2d 910, 913 (Tenn. 1995).

Rule 41.01(1) of the Tennessee Rules of Civil Procedure states that "the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause." However, subsection (3) of this rule mandates that a voluntary nonsuit to dismiss an action without prejudice "be followed by an order of voluntary dismissal signed by the court and entered by the clerk. The date of entry of the order will govern the running of pertinent time periods." Tenn. R. Civ. P. 41.01(3). The Advisory Commission's comments to Rule 41.01 explain, "New paragraph 41.01(3) mandates a court order after nonsuit. The order entry date would start the saving year running under T.C.A. § 28-1-105." Tenn. R. Civ. P. 41.01, Advisory Commission Comment to 2004 Amendment (2010). The Tennessee Supreme Court acknowledges the effect of the addition of subsection (3) to Rule

40.01: "The 2004 Advisory Commission Comments indicate that the one-year saving statute under Tennessee Code Annotated section 28-1-105 (2000) begins with the filing of the order granting nonsuit." *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889 (Tenn. 2011).

### 1. Effect of the Original Federal Case

Plaintiff's original, timely federal case against East Tennessee Zinc, Tennessee Zinc Services, the Industrial Development Board of Jefferson County, Innovative Training Solutions, Mossy Creek Mining Company, 11E Rentals, LLC, and Glencore was dismissed without prejudice on October 26, 2009. [3:08-cv-397, Doc. 7.] Though the Tennessee statute of limitations had expired, Plaintiff was entitled pursuant to the savings statute to file a new action against said defendants within one year of such dismissal. Plaintiff did so by filing the instant action on October 25, 2010, and accordingly Plaintiff's claims against East Tennessee Zinc, Tennessee Zinc Services, and Glencore are not time barred.

### 2. Effect of the Original State Case

Plaintiff's attempts to save his claims against the remaining three defendants, however, are not well taken. Though Plaintiff filed his Notice of Voluntary Dismissal in state court on October 25, 2010, the state court's Order of Entry of such dismissal was not entered until two weeks later, on November 8, 2010. While Plaintiff avers that his Notice of Voluntary Dismissal was sufficient to start the saving year under Tenn. Code Ann. § 28-1-105(a), the Court finds that the plain language of Rule 41.01(3) and Tenn. Code Ann. § 28-1-105(a), as well as Tennessee and other relevant case law, dictate that the saving statute's one year in which to commence a second action did not begin until the entry of the state court's order.

The plain language of Rule 41.01(3) makes clear that the entry of an order of judgment by the original court is necessary for the final adjudication of the original case, and the

Advisory Committee Comments expressly provide that "the order entry date would start the saving year running under T.C.A. § 28-1-105(a)." The plain language of the savings statute also dictates this result, as it only allows parties to "commence a new action within one (1) year *after* the reversal or arrest" of the original action. Tenn. Code Ann. § 28-1-105(a) (emphasis added).

Every Tennessee court that has considered the matter since the 2004 addition of subsection (3) to Rule 41.01 has agreed that the savings year commences upon entry of the court order. *See, e.g.*, *Lind*, 356 S.W.3d at 895 ("The 2004 Advisory Commission Comments indicate that the one-year saving statute under Tennessee Code Annotated section 28-1-105 (2000) begins with the filing of the order granting nonsuit."); *Freeman v. CSX Transp., Inc.*, 2011 WL 1344727, *3 (Tenn. Ct. App. Apr. 7, 2011) ("While Plaintiff took a voluntary nonsuit in open court on March 30, 2009, Tenn. R. Civ. P. 41.01(3) provides that, "[t]he date of entry of the order [of voluntary dismissal] will govern the running of pertinent time periods.") (citing *Evans v. Perkey*, 627 S.W. 636, 641 (Tenn. Ct. App. 1982) (holding that the one year period provided by the savings statute commences on the date of entry of the order granting the nonsuit and not from the date of filing of the notice of nonsuit)); *Williams v. Cliburn*, No. M2007-01763-COA-R3-CV, 2008 WL 5070047, *2 (Tenn. Ct. App. 2008) ("Once the order granting the non-suit has been duly entered by the clerk, the savings statute, Tenn. Code Ann. § 28-1-105, allows that the plaintiff may commence a new action within one year."); *Stewart v. Cottrell*, 255 S.W.3d 582, 585 (Tenn. Ct. App. 2007) ("[T]he court must sign an order and the order must be entered by the clerk. Until both conditions have been met, Rule 41 has not been satisfied and, thus, the one-year time constraint within which to commence the second action has not yet begun.").

Recently, in *Brooks v. Paccar, Inc.*, the Tennessee Special Workers' Compensation Appeals Panel considered a remarkably similar case on direct appeal from the

[7]

Case 3:10-cv-00455   Document 70   Filed 03/29/12   Page 7 of 20   PageID #: 960

Circuit Court for Davidson County, Tennessee. No. M2009-00602-WC-R3-WC, 2010 WL 454811 (Tenn. Workers Comp. Panel. Feb. 10, 2010). In *Brooks*, an employee originally and timely filed suit against his employer in Chancery Court of Davidson County, Tennessee. *Id.* 1. After the Tennessee statute of limitations expired, the employee filed a notice of voluntary nonsuit in the Chancery Court, *and* a new action in the Circuit Court of Davidson County, on the same day. *Id.* Six days later, the Chancery Court entered an order of voluntary dismissal in the original case. *Id.* The employer moved to dismiss the Circuit Court action on the grounds that the Chancery Court action was still pending at the time the Circuit Court action was filed. *Id.* The employee responded that because he had filed a notice of voluntary nonsuit in Chancery Court, his suit therein was "no longer viable," and therefore not "pending" when the Circuit Court action was filed later that day. *Id.* The Circuit Court granted the employer's motion to dismiss, and the employee appealed, contending that the court erred in its interpretation of Rule 41.01 of the Tennessee Rules of Civil Procedure. *Id.*

The Tennessee Special Workers' Compensation Appeals Panel concluded that the Chancery Court action was still pending at the time the Circuit Court action was filed, and affirmed the Circuit Court's decision to dismiss the action as barred by the statute of limitations. *Id.* * 3. After quoting the 2004 addition of subsection (3) to Rule 41.01, the court noted: "This language, in our view, leaves little room for interpretation. A voluntary dismissal under Rule 41.01 does not become effective until an order is entered." *Id.* The Court concluded that the Chancery Court action was still pending at the time the case was filed in Circuit Court, and that therefore the trial court correctly dismissed the complaint. *Id.*

Other courts have come to similar conclusions regarding the requirement that any action alleged to be timely under a state savings statute must be filed *after* the dismissal of the

original, timely action. In *Hayden v. Ford Motor Co.*, a district court in the Northern District of Ohio considered a federal action that was commenced "after the [federal] lawsuit was filed, but before it was dismissed." 364 F. Supp. 398, 401 (N.D. Ohio 1973), *rev'd on other grounds*, 497 F.2d 1292 (6th Cir. 1974). In *Hayden*, the plaintiff attempted to invoke the Ohio savings statute that, like the Tennessee savings statute, required that the second action be commenced "within one year after" the original action was dismissed. *Id.* While the court decided the case on other grounds, it noted in dicta that "since [the plaintiff] did not file this action within one year 'after' the Crawford County lawsuit was dismissed she cannot avail herself of this statute." *Id.* Though the Sixth Circuit reversed the court's decision on the grounds that the defendant "did not attempt to raise the statute of limitations as a bar to the litigation until almost thirty months after the filing of the action in federal court" and therefore waived the statute of limitations defense, it did not remark upon the district court's reasoning regarding the effective date of the Ohio savings statute. 497 F.2d at 1293, 1294-96.

Though at times the interpretation advocated in the aforementioned decisions may lead to harsh results for plaintiffs, courts are wary to permit cases filed outside the relevant statute of limitations to proceed where the language of the savings statutes so plainly provides that such filings must take place "after" the dismissal of the original action. In *Cook v. G.D. Searle & Co., Inc.*, 759 F.2d 800, 806 n.9 (10th Cir. 1985), the Tenth Circuit noted:

> [T]he district court rejected the argument of plaintiff grounded on this [savings] statute, concluding that the savings statute allows for a new action only in cases where a second identical suit is filed within one year *after* termination of the original action, while here the plaintiff commenced her second action in Colorado before the Iowa federal suit was dismissed as to the defendant doctors. The statute is not reasserted on appeal and we are not convinced that there was any error in the court's interpretation of the state law.

[9]

*Id.* (emphasis in original). *See also Graziano v. Pennell*, 371 F.2d 761, 763-64 (2d Cir. 1967) ("[A] broader reading that the saving statute can never apply when a timely action is pending accords with the manifest purpose of the statute and with what other New York courts have said.").

Based on the plain language of Rule 40.01 and Tennessee's savings statute, the Court concludes that Plaintiff's state court case was still pending at the time of the filing of the Complaint in the instant matter on October 25, 2010. In addition, the Court is unpersuaded by Plaintiff's claim that the *nunc pro tunc* language in the state court's order had the effect of relating the November 8, 2010 order back to October 25, 2010. A *nunc pro tunc* entry "is an entry made now, of something which was actually previously done, to have effect as of the former date. Its office is not to supply omitted action by the court, but to supply an omission in the record of action really had where entry thereof was omitted through inadvertence or mistake." *Cantrell v. Humana of Tenn., Inc.*, 617 S.W.2d 901, 902 (Tenn. Ct. App. 1981). The purpose of an order *nunc pro tunc* is "to make the record speak the truth." *Dewees v. Sweeney*, 947 S.W.2d 861, 863 (Tenn. Ct. App. 1996). The Tennessee Supreme Court has made clear that "entry of a judgment *nunc pro tunc* should only be granted when it can be shown by clear and convincing evidence that the judgment sought is the one previously announced." *Blackburn v. Blackburn*, 270 S.W.3d 42, 50-51 (Tenn. 2008). Here, Plaintiff has produced no evidence that the state court granted the voluntary dismissal prior to November 8, 2010 or exhibited the requisite inadvertence, mistake, or error. The inclusion of the *nunc pro tunc* order in the state court therefore did not have the effect of moving up the starting date of Plaintiff's saving year under Tenn. Code Ann. § 28-1-105.

The Tennessee savings statute does not except Plaintiff's claims from dismissal under the Tennessee statute of limitations, as the one-year saving period had not yet commenced at the time Plaintiff filed the instant action. Plaintiff's claims against Sandvik USA, Sandvik Oy, and Detroit Diesel are therefore time barred by the Tennessee statute of limitations.

B. **Exclusivity Provision of the Tennessee Workers' Compensation Act**

Plaintiff concedes that Tennessee Zinc Services, his direct employer, is immune from liability under the exclusivity provision of the Tennessee Workers' Compensation Act. Accordingly, the motion to dismiss Tennessee Zinc Services from this action will be granted. However, the parties dispute whether East Tennessee Zinc---Tennessee Zinc Services's sister company, and the lessee and owner of equipment at Young Mine---also is entitled to immunity under Tenn. Code Ann. § 50-6-102.

Tennessee's Workers' Compensation Laws apply to all employees and employers under any contract for hire, written or implied. Tenn. Code Ann. § 50-6-102. Tenn. Code Ann. § 50-6-108, known as the "exclusivity doctrine," provides:

> The rights and remedies herein granted to an employee subject to the Workers' compensation Law . . . on account of personal injury or death by accident . . . shall exclude all other rights and remedies of such employee . . . on account of such injury or death.

This provision operates to bar tort actions by an employee against his employer if the injury was sustained in the course and scope of employment.

It is well settled that "separate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice." *Green v. Windsor Mach. Prods., Inc.*, 173 F.3d 594 (Mich. 1999). Thus, "the vast majority of states do not extend the reach of the exclusive remedy provision of a workers' compensation act by treating parent and subsidiary corporations as a single entity." *Id.* However, the Tennessee Supreme Court has held

that the exclusivity doctrine extends to parent, subsidiary, or sister company employee relationships where the companies are "completely integrated and commingled," "inextricably involved," or where the subsidiary is "totally subservient to its parent." *Stigall v. Wickes Mach*, 801 S.W.2d 507, 509-11 (Tenn. 1990).

Further, Tenn. Code Ann. § 50-6-113(a) provides that a principal contractor may be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal and "engaged upon the subject matter of the contract to the same extent as the immediate employer." This statute "applies only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under the principal contractor's control or management." Tenn. Code Ann. § 50-6-113(d). When considering whether a contractor is a statutory employer, Tennessee courts also take into consideration (1) whether the work being performed is the same type of work usually performed by the company that hired the contractor or the work performed by a subcontractor's employee is part of the regular business of the company; and (2) whether the company has the right to control the employees of the contractor. *See, e.g.*, *Murray v. Goodyear Tire & Rubber Co.*, 46 S.W.3d 171, 176 (Tenn. 2001).

At the time of the alleged accident, Tennessee Zinc Services and East Tennessee Zinc were separate and distinct legal entities. They had separate managers and separate operating agreements. They had the same Federal Employer Identification Number, but different registered agents. Their "services and functions" were also different. East Tennessee Zinc was the lessee of Young Mine, and was charged with maintaining and improving, as well as eliminating hazards within, the mine. It owned the mineral rights to the mine, and purchased and maintained all of the equipment used on the mine. Conversely, Tennessee Zinc Services was responsible for hiring

[12]

individuals for mines leased by East Tennessee Zinc and another of its sister companies, Middle Tennessee Zinc. Tennessee Zinc Services also issued paychecks and benefits to said miners.

With regard to Plaintiff in particular, Defendants have several times represented that Plaintiff's "employer" at the time of the accident was Tennessee Zinc Services. At the time of the accident, Plaintiff was receiving paychecks and earnings statements from Tennessee Zinc Services. However, the mine at which Plaintiff worked, Young Mine, was operated by East Tennessee Zinc. Defendants allege that Defendant received training from East Tennessee Zinc, and daily entered a mine he knew to be owned by East Tennessee Zinc. Defendant's employment application displayed the East Tennessee Zinc company logo, but the letter included language indicating that Plaintiff was "employed by Tennessee Zinc Services" and "with Tennessee Zinc Services" and could be "terminat[ed] from Tennessee Zinc Services." After Plaintiff's accident, only the mine operator, East Tennessee Zinc, was cited with various violations of the Federal Mine Safety Act. The policy under which Plaintiff currently is being paid workers' compensation benefits for his injuries named Tennessee Zinc Services, East Tennessee Zinc, and their parent company, Tennessee Zinc Company, LLC, as endorsees. Since the accident in question, East Tennessee Zinc has been sold by Tennessee Zinc Company, LLC to a Belgian company, NYRSTAR, while Tennessee Zinc Services remains a Tennessee Zinc Company, LLC entity.

The Court does not find persuasive Defendants' argument that, while East Tennessee Zinc and Tennessee Zinc Services maintained separate legal identities, they operated in a "completely integrated and commingled" or "inextricably involved" relationship in employing the plaintiff. It is undisputed that East Tennessee Zinc and Tennessee Zinc Services had distinct functions with regarding to Young Mine and its employees, with East Tennessee Zinc's primary role being the leasing of and management of operations at Young Mine, and

Tennessee Zinc Services's primary role being the employment of miners at several mines leased by their parent company. *See White v. Swift Transp. Corp*, No. 3:05-CV-303, 2005 WL 3240587, *4 (E.D. Tenn. Nov. 30, 2005) (White, J.) ("[B]usiness entities are free to create corporate and company structures that perform different functions and own different assets."). Further, Defendants produced no evidence that an contractor-subcontractor relationship existed between the two entities, and therefore the Court cannot determine at this time whether the immunity granted to principal contractors under § 50-6-113(a) shields East Tennessee Zinc from liability in this case. The Court finds that the totality of the facts on record at present create at least conflicting inferences regarding whether East Tennessee Zinc is protected by the exclusivity provision, and therefore the motion to dismiss East Tennessee Zinc as immune must be denied.

### C. 12(b)(1): Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, see *Willy v. Coastal Corp.*, 503 U.S. 131, 136-37 (1992); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986), which is not to be expanded by judicial decree, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951). It is to be presumed that a cause lies outside this limited jurisdiction, *Turner v. Bank of N. Am.*, 4 U.S. 6 (1799), and the burden of establishing the contrary rests upon the party asserting jurisdiction, *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377-78 (1994). In accordance with these dictates, as well as the requirements set forth in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must provide in his or her Complaint a short and plain statement of the grounds for the court's jurisdiction.

Challenges to a court's subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure come in two forms: facial and factual. *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial challenge "questions merely the sufficiency of the pleading," and the court must "take[] the allegations in the complaint as true." *Id.* On the other hand, in a factual attack on the subject-matter jurisdiction alleged in the complaint, "no presumptive truthfulness applies to the allegations." *Id.* Rather, a court "must weigh[] the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id.* In its review of a factual attack, a district court "has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts," *Id.* In this case, Defendants have made a factual challenge to the Court's federal question jurisdiction, and both facial and factual challenges to the Court's diversity jurisdiction. *See* [Doc. 10, at 2 ("[P]laintiff's reliance upon complete diversity is misplaced. His Complaint is not sufficiently or properly pled with regard to the same, and, complete diversity does not exist between the plaintiff and the defendants Tennessee Zinc Services Company, LLC and East Tennessee Zinc Company, LLC.").]

    a. **Federal Question Jurisdiction**

District courts have original "federal question" jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff's Complaint alleges that this Court has federal question jurisdiction over "any federal question which may arise under the United States Federal Mine and Safety Act." [Doc. 1, at 1.] It is well established that there is no private cause of action under the Federal Mine Safety and Health Act, *see, e.g.*, *Howard v. Milam*, 905 F.2d 1529, *4 (4th Cir. 1990) (table) (collecting

cases); *Raymer v. United States*, 660 F.2d 1136, 1140 (6th Cir. 1981), and accordingly the Court does not have federal question jurisdiction over any of the claims in this action.

### b. Diversity Jurisdiction

The Court's subject matter jurisdiction over this action therefore depends on whether the Court has diversity jurisdiction. Federal diversity jurisdiction exists where there is complete diversity of citizenship between the plaintiff and all of the defendants, and the amount in controversy exceeds $75,000, exclusive of costs and interest. 28 U.S.C. § 1332. Here, Plaintiff has pled damages in the amount of $100 million, plus punitive damages of 10% of Defendants' net worth during the fiscal year for 2007. [Doc. 1, at 16.] Accordingly, the amount in controversy requirement undoubtedly is met, and the parties dispute only whether complete diversity of citizenship exists.

Diversity of citizenship means that the action is between "citizens of different States." 28 U.S.C. § 1332(a)(1). Complete diversity means that no plaintiff is a citizen of the same state as any defendant. *Glancy v. Taubaun Ctrs., Inc.*, 373 F.3d 656, 664 (6th Cir. 2004). Citizenship for natural persons is determined by a person's domicile, which requires a court to consider both where a person resides and that person's intent to reside in a particular place. *Moulds v. Bank of N.Y. Mellon*, No. 1:11-CV-200, 2011 WL 4344439, *4 (E.D. Tenn. Sept. 14, 2011) (citing *Von Dunser v. Aronhoff*, 915 F.3d 1071, 1072 (6th Cir. 1990)). The general rule adopted by the Sixth Circuit, and every other circuit to address the issue, is that "all unincorporated entities---of which a limited liability company is one---have the citizenship of each partner or member." *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 Fed. App'x 374 (6th Cir. 2011); *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187-92 (1990)). In addition, "'because a

[16]

Case 3:10-cv-00455   Document 70   Filed 03/29/12   Page 16 of 20   PageID #: 969

member of a limited liability company may itself have multiple members---and thus may itself have multiple citizenships---the federal court needs to know the citizenship of each 'sub-member' as well.'" *V&M Star, LP v. Centimark Corp.*, 596 F.3d 354, 356 (6th Cir. 2010) (citing *Delay*, 585 F.3d at 1005). Indeed, "even if one of [an LLC's] members---or one member of a member---were a citizen of [the same state as the plaintiff], then complete diversity, and with it federal jurisdiction, would be destroyed. *Delay*, 585 F.3d at 1005 (citing *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000)).

In *V&M Star, LP*, the Sixth Circuit found that a plaintiff's amended complaint, which named its limited and general partners but did not properly explain its partners' citizenship, was insufficient to prove complete diversity. 596 F.3d at 365. The Sixth Circuit held that the trial court "should have insisted that V&M establish the citizenship of its partner LLCs, including any 'sub-members,' *see Delay*, 585 F.3d at 1005, and conducted an inquiry into the citizenship of the French [company]. As it stands, the current jurisdictional allegations are fatally incomplete, leaving us uncertain that diversity jurisdiction exists." *Id.* at 357.

The jurisdictional allegations in Plaintiff's Complaint state as follows: that Plaintiff is a resident of the state of Tennessee, that Defendant Glencore is a "foreign corporation headquartered in Switzerland," that Defendant East Tennessee Zinc Company, LLC is a "foreign company incorporated in the state of Delaware," that Defendant Tennessee Zinc Services Company, LLC is a "foreign company incorporated in the state of Delaware," that Defendant Sandvik USA is a "foreign company incorporated in the state of Georgia," that Defendant Sandvik Oy is a "foreign company headquartered in Turku, Finland," and that Defendant Detroit Diesel is a "foreign company incorporated in the state of Michigan." [Doc. 1, ¶ 1.] Like the plaintiff's amended complaint in *V&M Star*, Plaintiff's jurisdictional allegations are deficient.

The Complaint does not identify East Tennessee Zinc Company's members and does not state that none of its members are citizens of Tennessee. The Complaint also does not make any allegations regarding the unincorporated defendants' state of citizenship.

Plaintiff attempted to cure the deficient jurisdictional allegations in his responses to Defendants' various motions to dismiss. Plaintiff alleges that, according to the operating agreements of East Tennessee Zinc and Tennessee Zinc Services, the sole member (or owner) of both limited liability companies is Tennessee Zinc Company LLC, a resident of Delaware. [Doc. 25, at 2.] Plaintiff concludes that "since the sole member (owner) is a resident of Delaware, which is different from the residency of plaintiff, complete diversity exists . . . ." *Id.* However, as clearly dictated by the Sixth Circuit and Tennessee courts, where the sole member of an LLC is another LLC, the court "needs to know the citizenship of each 'sub-member' as well.'" *V&M Star*, 596 F.3d at 356.

The Court concludes that Plaintiff's Complaint fails to establish that this Court may exercise subject matter jurisdiction in this case. However, under Rule 15 of the Federal Rules of Civil Procedure, the Court has wide discretion to allow a party to amend a complaint. *See Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 613 (6th Cir. 2005). In accordance with its mandate to give parties leave to amend their complaints where justice so requires, the Court will permit Plaintiff to attempt to cure the Complaint's jurisdictional flaws by filing an amended complaint on or before April 16, 2012.

D.     **12(b)(2): Personal Jurisdiction**

Defendant Sandvik Oy, a Finnish company, has alleged that the Court does not have personal jurisdiction over it. Because the Court finds Plaintiff's Complaint barred as against

Sandvik Oy under the Tennessee statute of limitations, the Court declines to consider the question of this Court's personal jurisdiction.

### E. Failure to State a Claim against Glencore Ltd., Inc.

Finally, Defendant Glencore avers that the Complaint fails to allege any independent tortious conduct on the part of Glencore, and that Plaintiff is therefore seeking to impose liability upon Glencore based solely upon the alleged torts of its subsidiaries. Because the jurisdictional allegations in Plaintiff's Complaint are insufficient to establish the Court's subject matter jurisdiction over this action, the Court will not reach the question of whether the Complaint states a claim against Glencore.

## V. Conclusion

For the reasons contained herein, the motions filed by Defendants Sandvik Construction and Mining USA, LLC [Doc. 10], Sandvik Construction and Mining Oy, LLC [Doc. 34], and Detroit Diesel Corporation [Doc. 23] to dismiss Plaintiff's claims as barred by the applicable Tennessee statute of limitations are hereby **GRANTED**.

Defendant Tennessee Zinc Services Company, LLC and East Tennessee Zinc Company, LLC's motion to dismiss [Doc. 20] and Defendant Glencore Ltd., LLC's motion to dismiss [Doc. 31] are **GRANTED IN PART** and **DENIED IN PART AS PREMATURE**, subject to renewal. Plaintiff's claims against Tennessee Zinc Services are hereby dismissed as prohibited by the exclusivity provision of the Tennessee Workers' Compensation Act. Furthermore, the jurisdictional allegations in Plaintiff's Complaint are insufficient to establish the Court's subject matter jurisdiction over this matter. Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is **GRANTED** without prejudice to Plaintiff's

ability to file **on or before April 16, 2012**, an Amended Complaint against East Tennessee Zinc and Glencore, after which said Defendants may filed renewed motions to dismiss.

        **IT IS SO ORDERED**.

                      **ENTER:**

                                      s/ Thomas W. Phillips
                                    United States District Judge