UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JEREMIAH HUNLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:10-CV-455 |
| ) | (PHILLIPS/GUYTON) |
| V. ) | |
| ) | |
| GLENCORE LTD, INC., and ) | |
| EAST TENNESSEE ZINC CO., LLC, ) | |
| ) | |
| Defendants. ) | |

## <u>MEMORANDUM AND ORDER</u>

This case is before the undersigned pursuant to 28 U.S.C. § 636 and the Rules of this Court. Now before the Court is Plaintiff's request for testing pursuant to Rule 34 of the Federal Rules of Civil Procedure. Defendant EZT has objected to the testing proposed by Plaintiff. For the reasons stated herein, the Plaintiff's request to perform certain tests on a Toro 40D haulage truck will be **QUASHED**.

**I.     BACKGROUND**

On December 8, 2007, Plaintiff was injured while operating a Toro 40D haulage truck ("the Toro truck"), in a zinc mine known as the Young Mine and operated by East Tennessee Zinc Company, LLC, ("EZT"). In his Amended Complaint [Doc. 77], the Plaintiff claims that EZT and Defendant Glencore, LTD, Inc., are liable for his injuries based upon theories of negligence, negligence *per se*, premises liability, negligence based upon *res ipsa loquitur*, and strict liability for an ultra-hazardous activity.

This matter came before the undersigned on March 4 and March 5, 2013, for telephone conferences to address Plaintiff's proposal to perform tests on the Toro truck at or near the Young Mine. EZT objected to the tests proposed. The tests are described in detail in a letter from Attorney Richard Collins, counsel for the Plaintiff, to Attorney Lynn Peterson, counsel for the Defendant, dated February 27, 2013. See Ex. 5 to Hrg. The Court found that the issues presented could not be resolved without conducting an evidentiary hearing.

On March 8, 2013, the Court conducted an evidentiary hearing and heard testimony from witnesses presented on behalf of the Plaintiff and EZT. EZT called: Rodric Breland, a Certified Mine Safety & Health Professional, who worked as a regional safety manager for the Federal Mine Safety & Health Review Commission, see Ex. 1 to Hrg.; Larry Duck, a diesel mechanic at the Young Mine; and Aaron Jones, a transportation and materials expert with a masters degree in Metallurgical and Materials Engineering and experience as a mechanic, see Ex. 6 to Hrg. Plaintiff called: Bruce Dial, a Certified Mine Safety & Health Professional operating Dial Mine Safety, a consulting firm, see Ex. 4 to Hrg.; and William James Kluge, Jr., a mechanical engineer with experience in forensic engineering.

The Court afforded the parties up to and including March 22, 2013, to file supplemental briefs based upon the testimony received at the evidentiary hearing, and both parties filed such briefs on March 22, 2013.

The Court finds that this matter is now ripe for adjudication.

## II. POSITIONS OF THE PARTIES

The Court finds that of the tests initially proposed, only Tests C, F, and H are in dispute. [See Doc. 128 at 5; Doc. 129 at 2]. The Plaintiff's has abandoned the other proposed tests. The tests at issue are described as:

- *Test C*: In fourth gear, travel a preset distance at full throttle from a stopped position, at which point the ignition switch will be turned off and the brake pedal fully applied.

  . . . .

- *Test F*: In third gear, travel a preset distance at full throttle from a stopped position, at which point the ignition switch will be turned off and the brake pedal fully applied.

  . . . .

- *Test H*: Travel straight a preset distance at full throttle from a stop position, at which point the ignition switch will be turn[ed] off. Once the ignition has been turn[ed] off, the steering wheel will be turned a quarter of a turn to the right (or to the 3:00 position), held for one second and then steered to the left for a half of turn (or to the 9:00 position). After the steering response has been noted and the vehicle has traveled for at least 2 seconds with the steering wheel at the 9:00 position, the vehicle [will] be brought to a stop.

[Ex. 5 at 3].

EZT argues that it would be extremely prejudiced by the testing proposed by the Plaintiffs. EZT maintains that it will incur significant repair costs for damage caused by the proposed tests and the costs of any production lost while the Toro truck is being tested and during the period of repairs. In addition, EZT argues it may be subject to significant costs in the form of fines and penalties assessed by federal mining agencies. EZT argues that the Plaintiff has failed to demonstrate that the proposed destructive testing of the Toro truck is reasonable, necessary, or relevant to proving Plaintiff's case in chief. EZT contends that Plaintiff bears the burden of proof on this issue. EZT maintains that the proposed testing should not go forward.

3

Plaintiff maintains that EZT has not substantiated any of its alleged concerns about financial prejudice or liability for mine safety violations. Plaintiff argues that EZT bears the burden of proof on this issue, and it has not carried its burden. Plaintiff contends that the testing proposed is not destructive testing because it will not prevent another party from presenting similar evidence at trial. Plaintiff argues that EZT's contention that it will be exposed to federal fines for mine-safety violations have not been substantiated. Plaintiff maintains that Plaintiff's expert should be granted leave to complete the proposed tests as soon as possible.[1]

## III. ANALYSIS

Pursuant to Rule 34(a) of the Federal Rules of Civil Procedure, a party may serve on any other party a request to test a designated object. Fed. R. Civ. P. 34(a)(2). The testing must be "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). Like other discovery, the testing of an object may be limited by the Court if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in an action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1)(C).

"When the discovery material sought appears to be relevant, the party who is resisting production has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." Invesco Institutional (N.A.), Inc. v. Paas, 244 F.R.D. 374, 380 (W.D. Ky. 2007) (citing Horizon Holdings, LLC v. Genmar Holdings, Inc., 209 F.R.D. 208, 211-12 (D. Kan. 2002)).

---

[1] The Plaintiff argues briefly that spoliation has occurred through the rebuilding of the Toro truck. Plaintiff has not brought a motion for sanctions based upon spoliation, and the Court finds that the issue of spoliation is not before the Court.

"The decision whether to allow testing, including destructive testing, falls within the sound discretion of the court." Holmes v. J.M. Products, Inc., 2005 WL 927172, at *3 (W.D. Tenn. Jan. 07, 2005) (citing Ostrander v. Cone Mills, Inc., 119 F.R.D. 417, 418 (D. Minn. 1988)). If the parties differ as to whether an inspection or test is appropriate, "the court must balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." Scruggs v. Inter'l Paper Co., 278 F.R.D. 698, 700 (S.D. Ga. Jan. 12, 2012).

The parties have cited the Court to additional factor-based weighing tests employed by District Courts in evaluating requests for destructive testing. See, e.g., Mirchandani v. Home Depot, U.S.A., Inc., 235 F.R.D. 611 (D. Md. 2006). The Court has examined the case law before it and has considered the value of the factor-based test, but the Court finds that the factor-based test is meant to evaluate truly destructive testing.

Though the parties have used the term "destructive testing" to describe the tests proposed by Plaintiffs, it appears to the Court that the testing is not "destructive testing" in its classic form. Destructive testing is testing that destroys or irreversibly alters evidence. See Mirchandani, 235 F.R.D. 611 ("[S]uch testing would irreversibly alter the bolt subjected to testing."). The instant testing is better described as damaging testing. EZT's own position supports the conclusion that the testing is not destructive in the classic sense, because: (1) EZT maintains the "Toro 40D is not the same truck as it was on the date of the incident," [Doc. 128 at 6]; and (2) the testimony in the record establishes that any damage to the Toro truck could likely be repaired. EZT submits that this truck is not even relevant evidence and the damage to it would be reversible but at a great economic cost. The Court is not faced with the classic situation of destructive testing in which an object central to the case would be wholly consumed or destroyed.

5

The Court, therefore, finds that the appropriate measure for determining whether the tests proposed by the Plaintiff should go forward is to weigh "the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." Scruggs, 278 F.R.D. at 700. The Court finds that factors included in the factor-based – for example, the inability to present the object at trial after testing – are not applicable to the instant issue.

## A. Relevancy

The Court turns first to the relevancy of the tests at issue. See Fed. R. Civ. P. 26(b). "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401 (internal punctuation omitted).

In his Amended Complaint, Plaintiff alleges that he was operating the Toro truck in the mine following close to the left side of the mine, as instructed by ETZ. [Doc. 77 at ¶ 13]. Plaintiff alleges:

> 14. As Plaintiff approached the water/air pipe, he attempted to steer the truck to the right in order to avoid impact[. H]owever the engine stalled, causing both the braking and steering mechanism to fail.
>
> 15. As a result of the location of the water pipe, as well as the failure of the truck to properly operate when the steering and braking mechanisms were applied, as well as other factors, Plaintiff impacted the protruding water/air pipe.
>
> 16. The impact caused serious and life-threatening injuries to Plaintiff, including loss of both hands.

[Id. at ¶¶ 14-17]. Plaintiff claims that EZT was negligent in failing to maintain, inspect, and/or repair the Toro truck, and he alleges that EZT's negligence caused the steering and braking mechanisms to fail causing his injuries. [Id. at ¶ 20].

6

The Court finds that the testing proposed by the Plaintiff is not likely to yield results relevant to the Plaintiff's claims in this case, because: (1) the Toro truck was rebuilt in 2012; (2) the Plaintiff has not presented a design-defect claim; (3) the Toro truck does not have a backup system to test; and (4) the parameters for the testing do not mimic the factual allegations.

**1.**     *The Rebuild of the Toro Truck Undercuts Relevance*

The Court finds that the testing at issue is of little relevance to the Plaintiff's claims. The Court finds that, because the Toro truck has been completely rebuilt since the Plaintiff's accident, the proposed tests will not make the facts alleged by Plaintiff more or less probable.

Larry Duck is a diesel mechanic at the mine where Plaintiff was injured. He has been employed in that capacity since 1982, except for a five-year period when the mine shut down, and he testified that he is familiar with the Toro truck. [Doc. 127 at 64]. He testified that the Toro truck was completely rebuilt in August 2012, and he explained that a complete rebuild would entail a completely new drive train, brakes, transmission, differential, engine, and bed work. [Id. at 66-67]. Additionally, he testified that the truck has seen twelve thousand hours of service since 2007. [Id. at 67].

The Plaintiff's own expert William Kluge did not offer testimony that would undermine the suggestion that the Toro truck is essentially a different machine than it was in 2007. [Id. at 111]. The Plaintiff did not dispute EZT's contention that the Toro truck was completely rebuilt in its supplemental brief. [Doc. 129 at 2].

The Court finds that the rebuild of the Toro truck undermines the potential relevance of the proposed tests. Testing brake components and steering components, which were not in the truck when this accident occurred in 2007, will not make the factual allegations in this case more or less likely to have occurred. Results obtained using the components installed in 2012 would

7

not make the allegation that the "engine stalled, causing both the braking and steering mechanism to fail" more or less likely, nor would they demonstrate that the alleged mechanical failure was related to negligent maintenance on the part of the Defendant. Thus, the Court finds that the rebuild undercuts the alleged relevancy of the results of the proposed tests.

**2.** *The Lack of a Design Claim and the Lack of a Backup System Undercut Relevance*

Plaintiff proposes that Mr. Kluge perform the tests on the Toro truck. When asked about the rebuild, Mr. Kluge failed to redress the allegations that the rebuild undermined relevancy. He instead cited two alternative bases for relevancy. First, he cited the need for information about a design problem, and second, he cited the need for information about a backup system. He stated:

> Q. In any event, we've heard testimony about a rebuild. Can you explain whether or not that will have an impact – what impact, if any, that will have on the test results?
>
> A. No, I want to rule out if there's a design or mechanical problem. And I also wanted some – I have to do basic service brake and park brake tests so I can know what this machine could do in the event of an emergency like this one and then the backup systems because in here, the – it was claimed that the engine had stalled and that's one reason he lost some steering and/or lost some brakes and test how these backup systems work so that I know how to analyze the backup system compared to the service brake system. And the same thing with steering.

[Id. at 111]. Neither information about a design problem nor information about a backup system is relevant to the Plaintiff's claims.

*a.    Lack of Design Claim*

Plaintiff has not pled a design-defect claim in this case, nor is there any allegation that EZT played a role in designing the Toro truck. Plaintiff, under the heading "*Res Ipsa Loquitor*" in his Amended Complaint, states that Defendants had exclusive control of the Toro truck and

8

then posits: "Such steering and braking mechanisms would not have malfunctioned had they been properly maintained and/or repaired truck [sic], or if the truck had been properly designed and/or assembled; and thus the Defendants are liable under the doctrine of *res ipsa loquitor.*" The Plaintiff does not allege that either Defendant had any role in designing the Toro truck, nor does the Plaintiff reference the Tennessee Products Liability Act, Tenn. Code Ann. § 29-28-101. Moreover, Mr. Kluge conceded that a design-defect seemed unlikely, remarking, "By looking at all the manuals, it doesn't seem like there is any, but I need to rule that out." [Id. at 112]. The Plaintiff's passing reference to design in the Complaint and Mr. Kluge's supposition that design might be an issue do not support finding that the tests are relevant to the issues in this case.

b.      *Lack of Backup System*

Mr. Kluge testified that the tests were also needed to test the backup systems on the Toro truck. [Id. at 111, 116]. The Court finds the tests could not yield any results relevant to this case, because there is no backup system on the Toro truck. Aaron Jones, an expert witness with degrees in metallurgical and materials engineering and experience as a diesel mechanic and machinist, testified that there are no backup systems on the steering system of the Toro truck and "there is no backup accumulator system to apply the brakes when the engine is shut off because of the style of brake that is installed on this particular truck." [Id. at 127]. The Plaintiff has not offered any testimony controverting Mr. Jones's testimony, except to assert generally that "[a]lmost all machinery has backup systems." [Id. at 112].

The Court finds that the evidence in the record establishes that there is not a backup braking or steering system on the Toro truck. The Court, therefore, finds the results of tests performed to test a backup system that is not present would not be relevant to the Plaintiff's claims.

9

### 3. *The Lack of Congruency Between the Factual Allegations and Proposed Tests Undercuts the Relevancy of the Tests*

Finally, the Court finds that the tests proposed do not mirror or track Plaintiff's factual allegations. Plaintiff alleges that "he attempted to steer the truck to the right in order to avoid impact," but "the engine stalled, causing both the braking and steering mechanism to fail." [Doc. 1 at ¶ 14]. The Complaint implies, but does not state, that in attempting to steer the truck to the right, the Plaintiff applied the brake. [Id. at ¶ 15].

Initially the Court finds that the tests at issue all include turning off the ignition of the Toro truck. The Plaintiff does not allege that his accident occurred when the ignition was turned off, but obviously, the parties' ability to have the Toro truck stall on command is limited. This incongruence is not particularly alarming. The Court is, however, concerned by Mr. Kluge's testimony regarding modifications to the tests that were initially proposed. For example, when counsel for EZT suggested that Tests C, F, and H were mechanically impossible, Mr. Kluge stated that he would find an incline to start the tests upon. [Doc. 127 at 115]. The Plaintiff does not allege in his Complaint that the incident at issue took place when the Toro truck was travelling down an incline, and such amorphous modifications indicate to the Court that the Plaintiff's expert may be more concerned with securing permission to perform the tests than he is with their relevancy.

The Court finds that the parameters for the testing do not mimic the factual allegations, and without such congruency, the relevancy of the results from testing is minimal.

### 4. *The Court Finds the Relevancy is Minimal*

Based upon the foregoing, the Court finds that the relevancy of the tests at issue is minimal. The rebuilding of the truck, the hours of use elapsed, the lack of a design claim, the lack of a backup system, and the factual incongruence all undermine the relevance of the tests.

The Court finds that the results of the tests will have little to no tendency to make a fact of consequence more or less probable than it would have been without the tests. See Fed. R. Evid. 401. Therefore, the Court finds the results of the tests are of little to no relevancy to the Plaintiff's allegations.

**B.** **Prejudice**

The Court turns next to the prejudice caused by the proposed tests sought by the Plaintiff.

*1.   Economic Prejudice*

The Court finds that the tests at issue are likely to result in considerable economic prejudice to EZT. In a best-case scenario, the Toro truck will be out of service for at least a few hours to perform the tests. EZT presented testimony that each hour the truck is out of service costs EZT ten-thousand dollars ($10,000.00) in lost production. [Id. at 73]. Assuming the tests only took four hours, which the Court considers to be a low-end estimate, performing the tests alone would result in a production loss of approximately forty-thousand dollars ($40,000.00).

In a more likely scenario, the Toro truck would be out of service for four hours or so for the tests to be performed, and then, it would be out of service for repairs to the vehicle. Mr. Duck testified that the tests at issue have the potential to damage the vehicle by tearing the brake lining loose, breaking a brake disc, or twisting the spindle. [Id. at 70]. Mr. Duck testified that stops with the parking brake, which the Plaintiff has since withdrawn from his proposal, were of more concern, but he testified that the speed and force will affect the potential damage. [Id. at 70-72]. Mr. Duck testified that there are a few external indicators that can be examined to evaluate potential brake damage, but because the brake gears are internal, the brakes and wheels must be disassembled for an internal view of the damage. [Doc. Id. at 72]. Mr. Duck testified

that repairing one of the four brakes on the wheels of the Toro truck would take two mechanics a full shift to complete. [Id. at 72-73].

EZT advocates a finding that the Toro truck would be out of production for at least four days for repairs. The Court finds the Toro truck would likely be out of production for a more abbreviated period, because the Plaintiff has agreed not to perform the tests that involve pulling the parking brake. Nonetheless, the Court finds that Mr. Duck's testimony supports the conclusion that the abrupt braking tests described would require examination and repair that would have the Toro truck out of service for at least two eight-hour shifts.

Thus, the Court finds that the testing proposed is likely to require that the Toro truck be out of service for at least twenty hours – four hours for testing, one eight-hour shift for review and examination, and one eight-hour shift for repairs – at a cost of two-hundred thousand dollars ($200,000.00).[2] The Court finds that this financial burden or some equivalent financial burden is almost certain to be incurred by EZT, and the Court finds this burden is significant.

## 2. *Regulatory Prejudice*

The parties have also briefed the issue of mine safety and application of the Mine Safety and Health Administration Act ("MSHA") regulations to the proposed tests. The Court finds that it is neither necessary nor appropriate to adjudicate the potential MSHA liability that may be imposed on EZT if it were to let Mr. Kluge perform the proposed tests. Since the Supreme Court of the United States issued its ruling in Chevron v. Natural Resources Defense Council, 467 U.S. 837 (1984), lower courts have recognized that agencies are generally in the best position to

---

[2] The Court would note that this calculation does not include any costs imputed on the basis of work-place disruption. The Defendants did not offer any testimony about the disruption to mine activities other than the mechanical issues with the truck. The proposed tests are almost certain to disrupt some mine activities, as the parties attempt to find a space in proximity to the mine where they can perform braking tests on a truck weighing eighty-thousand pounds and move workers or other equipment out of the area so that the tests can be performed.

12

interpret the regulations within their purview.[3] Such deference is especially appropriate where, as here, the Court would be offering "an advisory opinion upon hypothetical situations." Briggs v. Ohio Elections Comm'n, 61 F.3d 487, 493 (6th Cir. 1995) (citing Golden v. Zwickler, 394 U.S. 103, 108 (1969)). Accordingly, the Court finds that the undersigned interpreting the meaning of "miner" or "independent contractor" is not appropriate or necessary to resolve the issues before the Court.

### 3. *Prejudice is Significant*

In sum, the Court finds that the prejudice to EZT that will result from the proposed testing is significant. The economic prejudice would be approximately $200,000.00, and the Court finds that this prejudice is very likely to result from the tests.

### C. The Court Finds that the Likely Prejudice to EZT Outweighs the Potential Relevance of the Results of the Proposed Testing

Based upon the above analysis, the Court finds that the prejudice to EZT likely to occur if the tests at issue are conducted outweighs the potential relevance of the results of the proposed testing. The Court finds that EZT has demonstrated that the testing at issue is of such marginal relevance that the potential harm resulting from the testing outweighs the presumption in favor of broad discovery. The Court finds that the burden and expense of the proposed tests outweigh

---

[3] In Chevron, the Court explained:

> Judges are not experts in the field . . . . In contrast, an agency to which Congress has delegated policy-making responsibilities may, within the limits of that delegation, properly rely upon the incumbent administration's views of wise policy to inform its judgments. While agencies are not directly accountable to the people, the Chief Executive is, and it is entirely appropriate for this political branch of the Government to make such policy choices—resolving the competing interests which Congress itself either inadvertently did not resolve, or intentionally left to be resolved by the agency charged with the administration of the statute in light of everyday realities.

Id. at 865-66.

their likely benefit, considering "the importance of the issues at stake in an action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1)(C).

The Court may, therefore, limit the extent of this proposed discovery. The Court finds that the parties have agreed that the Plaintiff will not perform Tests A, B, D, E, and G. The Court finds that the Plaintiff will be precluded, based upon the Court's analysis above, from conducting Tests C, F, and H.

## IV. CONCLUSION

Accordingly, the Plaintiff's request to perform the tests described as **Tests C, F, and H**, made pursuant to Rule 34 of the Federal Rules of Civil Procedure is **QUASHED**. The other tests proposed by the Plaintiff are resolved consistent with the parties' agreement.

**IT IS SO ORDERED**.

ENTER:

/s H. Bruce Guyton
United States Magistrate Judge